UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LARHONDA GAYLE LAWSON TUCKER | § | |
| | § | |
| | § | |
| v. | § | CIVIL NO. 4:23-CV-1051-SDJ |
| | § | |
| COMMISSIONER, SSA | § | |

**MEMORANDUM ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the Report and Recommendation of the United States Magistrate Judge ("Report"), this matter having been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On August 21, 2025, the Report of the Magistrate Judge, (Dkt. #11), was entered containing proposed findings of fact and a recommendation that the final decision of the Commissioner of the Social Security Administration be affirmed. Plaintiff LaRhonda Gayle Lawson Tucker timely filed an objection to the Report. (Dkt. #12). The Commissioner did not file a response to the objection.

The Court has conducted a de novo review of the objections and the portions of the Report to which Tucker specifically objects, and the Court is of the opinion that the findings and conclusions of the Magistrate Judge are largely correct and that the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court does, however, modify and expand on the Report's findings and conclusions as to Tucker's objection. Except as otherwise noted below, the Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

## I. BACKGROUND

This is an appeal of the Social Security Administration's ("SSA") decision denying Tucker's application for disability insurance benefits. The SSA's Administrative Law Judge ("ALJ") found that Tucker is not disabled within the meaning of the Social Security Act and, therefore, is not entitled to disability insurance benefits. Because the SSA Appeals Council denied Tucker's request for review of the ALJ's decision, the ALJ's unfavorable decision is the final reviewable decision in this case. *Sims v. Apfel*, 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); 42 U.S.C. § 405(g). Tucker timely appealed that decision to this Court. (Dkt. #1). Following briefing on the matter, the Magistrate Judge entered the Report finding that Tucker's arguments on appeal were without merit and recommending that the Court affirm the Commissioner's decision. (Dkt. #11). Tucker timely filed an objection to the Report. (Dkt. #12).

## II. LEGAL STANDARD

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)–(3). Where a party does not object to portions of a magistrate judge's report, "the district court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1420 (5th Cir. 1996) (en banc) (cleaned up), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections

from ten to fourteen days). Review of the SSA's underlying disability decision "is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Id.* (quoting *Harris*, 209 F.3d at 417).

## III. DISCUSSION

The Report describes the five-step sequential evaluation process the SSA must use in considering disability applications. (Dkt. #11 at 6–7); 20 C.F.R. § 404.1520. It also explains the SSA's procedure for evaluating mental and physical impairments, including the degree of functional limitation and severity of any impairment, at steps two and three. (Dkt. #11 at 9–11). The Court need not rehash the process in full. Relevant here, the process includes determining the claimant's residual functioning capacity ("RFC"), to be used in assessing the type of work a claimant is able to do. *See* 20 C.F.R. § 404.1520.

In this case, the ALJ found that Tucker:

> has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), such that [Tucker] can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, she can sit for 6 hours and stand/walk a total of 4 hours. Bilaterally, [Tucker] can occasionally operate foot controls and/or reach overhead. [Tucker] can occasionally balance, stoop, kneel, and/or climb ramps and stairs, while she can never crouch, crawl, and/or climb ladders, ropes or scaffolds. [Tucker] can never work at unprotected heights, but she can occasionally work around moving mechanical parts, operate a motor vehicle, and be exposed to vibration/extreme cold. [Tucker] is expected to miss one day of work per month.

(Dkt. #6-3 at 22). In so finding, the ALJ rejected the opinions of Paula LeAnn Gaston, an Advanced Practice Registered Nurse at Hometown Clinic, ("APRN Gaston") as unpersuasive. (Dkt. #6-3 at 23). The Report concludes that the ALJ's RFC assessment was supported by substantial evidence. (Dkt. #11 at 15–16).

Tucker objects to the Report because the Magistrate Judge did not include an analysis of 20 C.F.R. § 404.1520c when discussing the ALJ's RFC assessment. (Dkt. #12 at 1). She argues that the ALJ's persuasiveness assessment was insufficient per the requirements of § 404.1520c. (Dkt. #12 at 3). The Court agrees with Tucker on the point that the Report should have but failed to analyze Section 404.1520c. However, for the reasons stated below, the Court concludes that the ALJ's assessment that APRN Gaston's opinions were unpersuasive was sufficient pursuant to Section 404.1520c and will therefore overrule Tucker's objection.

**A. Persuasiveness Under 20 C.F.R. § 404.1520c**

20 C.F.R. § 404.1520c prescribes how an ALJ is to "consider medical opinions and prior administrative medical filings." ALJs are not required to "give any . . . controlling weight to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(b)(2)(a). Instead, the ALJ must determine the persuasiveness of the medical evidence according to the factors outlined in Section 404.1520c(b). *See Cooley v. Comm'r of Soc. Sec.*, 587 F.Supp.3d 489, 501 (S.D. Miss. 2021) (citing 20 C.F.R. § 404.1520c(b)(2)). A persuasiveness determination according to these factors is not optional. *Guy v. Comm'r of Soc. Sec.*,

No. 4:20-cv-01122, 2022 WL 1008039, at *3 (N.D. Tex. March 14, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)).

The five persuasiveness factors are "(i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Cooley*, 587 F.Supp.3d at 499 (citing 20 C.F.R. § 404.1520c(c)). The most important factors are supportability and consistency, and a discussion of those factors is mandatory. 20 C.F.R. § 404.1520c(b)(2); *see also Cooley*, 587 F.Supp.3d at 499. An explicit discussion of the remaining factors is optional. *Id.* § 404.1520c(b)(2); *see also Cooley*, 587 F.Supp.3d at 499.

Persuasiveness is adequately discussed if the ALJ's "explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence." *Cooley*, 587 F.Supp.3d at 499 (citation omitted). The regulatory text does not impose a "magic words" requirement. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). That is to say, "there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022). "[T]erse" findings may suffice. *Miller v. Comm'r of Soc. Sec.*, No. 120-CV-00194, 2022 WL 566175, at *6 (S.D. Miss. Feb. 24, 2022). Remand is appropriate only if there is no indication that the ALJ applied the correct standard. *Keel*, 986 F.3d at 556.

**B. The ALJ's Persuasiveness Assessment**

In determining Tucker's RFC, the ALJ stated that he "considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c." (Dkt. #6-3 at 22). The ALJ then made distinct persuasiveness findings as to each of those medical opinions and prior administrative medical findings. (Dkt. #6–3 at 23). As for APRN Gaston, the ALJ specifically found:

> The opinions of APRN Gaston are unpersuasive because they are not supported by the mental health treatment notes, which showed predominantly normal mental status examinations. Furthermore, the claimant's physical impairments were treated conservatively, and she reported an ability to handle personal care tasks, drive, prepare simple meals, and pay bills. Moreover, they are inconsistent with the record as a whole, which demonstrates minimal mental health treatment, and 4/5 muscle strength, despite the claimant's reports of pain (Exhibit 11F).

(Dkt. #6-3 at 23). The issue, then, is whether this paragraph satisfied the ALJ's obligations under Section 404.1520c.

On its face, the ALJ's opinion provides reasoning for why APRN Gaston's opinions did not satisfy the most important factors of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Of course, merely mentioning the words is not enough. Accordingly, the Court examines the factors and the ALJ's explanations in turn.

**i. Supportability**

"Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (cleaned up) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)) (explaining the ALJ must "consider the internal

supportability of a physician's medical opinion" and "give more weight to medical opinions with more internal explanation and support than to those without"). As this Court has explained, supportability "is an inward-facing concept, requiring the ALJ to evaluate how well a given medical opinion is supported on the strength of the opinion's own reasoning." *Terry v. Comm'r of Soc. Sec.*, No. 4:20-CV-618, 2023 WL 2586304, at *5 (E.D. Tex. Mar. 21, 2023).

The ALJ explained APRN Gaston's opinions were "not supported by the mental health treatment notes, which showed predominantly normal mental status examinations." (Dkt. #6-3 at 23). Tucker argues that the mental health explanation is conclusory because the ALJ "did not cite a single medical report of record, or any reported mental status examination findings." (Dkt. #12 at 3).

At first glance, the ALJ's explanation appears conclusory. But to be properly understood, the ALJ's explanation must be reviewed in the context of his wider decision. *See, e.g.*, *Coffia v. Kijakazi*, No. 4:22-cv-370, 2023 WL 6319351, at *4 (E.D. Tex. Aug. 21, 2023), *report and recommendation adopted*, 2023 WL 6300042 (E.D. Tex. Sept. 27, 2023) (looking to other portions of the ALJ opinion to explain ALJ's persuasiveness finding); *Cox v. Comm'r of Soc. Sec.*, No. 3:21-cv-53, 2022 WL 834294, at *4 (N.D. Miss. Mar. 21, 2022) (drawing from "the totality of [the ALJ's] decision" to conclude the ALJ properly considered the supportability and consistency factors); *Tischler v. Kijakazi*, No. 4:20-cv-0721, 2021 WL 5832843, at *3 (N.D. Tex. Dec. 9, 2021) (noting the ALJ considered the factors in "context of the overall evidentiary record").

Here, the ALJ discussed the entirety of Hometown Clinic and APRN Gaston's opinions at length in an earlier section of his decision. The ALJ noted that APRN Gaston had completed Treating Physician Interrogatories where she noted specific mental impairments:

> [APRN Gaston] opined that [Tucker] had difficulty concentrating or thinking, frequent crying, decreased memory, problems coping from stress, loss of interest in activities, sleep disturbance, and decreased energy. [APRN Gaston] opined that [Tucker] would be off task 25% of the time when applying common sense understanding to carry out instructions and in dealing with several concrete variables in or from standardized situations; and [Tucker] would be off task 15% of the time in applying common sense understanding to carry out detailed but uninvolved instructions, and deal with problems involving few variables in or from standard situations (including simple instructions).

(Dkt. #6-3 at 19) (citing Dkt. #6-8, Ex. 11F). However, Hometown Clinic's treatment notes, taken by APRN Gaston, undermined her opinions. In the following paragraph, the ALJ noted that the treatment notes showed that "[d]espite the mental impairment systems endorsed [by APRN Gaston], [Tucker] had normal orientation, fluent speech, and coherent thought processes. Her memory and higher cognitive function were intact." (Dkt. #6-3 at 19) (citing Dkt. #6-8, Ex. 12F).

The ALJ's reasoning is similar to that found in *Tischler*, 2021 WL 5832843, at *3. There, the court affirmed similar persuasiveness findings of the ALJ that stated, "the opinion of Dr. Slabaugh was 'not supported by her treatment notes nor is it consistent with the record as a whole, which includes normal mental status examinations.'" *Id.* The court concluded that the ALJ's findings "employed the proper legal standards" and "were supported by substantial evidence" because the ALJ did not "nakedly reject Dr. Slabaugh's opinion, the ALJ pointed to contravening evidence

in the record upon [which] he based his decision." *Id.* (alteration in original). "The ALJ also considered Dr. Slabaugh's opinion in context of the overall evidentiary record . . . ." *Id.*

Here too, the ALJ's wider decision shows he found APRN Gaston's opinions unsupported by her treatment notes. Contrary to Tucker's argument, the ALJ specifically compared two medical reports: Hometown Clinic's treatment notes (authored by APRN Gaston) and APRN Gaston's Treating Physician Interrogatories. The ALJ's finding adhered to the proper legal standard and was supported by substantial evidence when a comparison of those exhibits cast doubt on the supportability of APRN Gaston's medical opinions. As the court concluded in *Tischler*, "[i]t is not the Court's task to scrutinize the Commissioner's findings and conclusions, or to weigh their persuasiveness." *Id.* Here too, the Court will not substitute its judgment for that of the ALJ's but only determines whether substantial evidence supports his findings. The Court concludes that the ALJ's findings on the supportability of APRN Gaston's opinions adhered to the requirements of Section 404.1520c(b)(2).

**ii. Consistency**

Consistency means the extent to which the medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). In other words, consistency "is an outward-facing concept, requiring the ALJ to evaluate how consistent a medical opinion is with other evidence in the record." *Terry*, 2023 WL 2586304, at *5; *see also Bakke*, 62 F.4th

at 1068 (citation omitted) ("§ 404.1520c requires an ALJ to consider whether a medical opinion is consistent with the record as a whole.")

Here, the ALJ provides two reasons for why APRN Gaston's opinions are inconsistent with other record evidence: (1) APRN Gaston's physical impairment opinions were inconsistent with Tucker's own reported "ability to handle personal care tasks, drive, prepare simple meals, and pay bills"; and (2) APRN's Gaston's opinions were "inconsistent with the record as a whole, which demonstrates minimal mental health treatment, and 4/5 muscle strength, despite [Tucker's] reports of pain." (Dkt. #6-3 at 23) (citing Dkt. #6-8, Ex. 11F).[1]

Tucker again argues these explanations are conclusory because "the only reasoning provided by the ALJ for finding APRN Gaston's physical functional assessment unpersuasive was that it was 'inconsistent with the record as a whole,' while citing to 'Exhibit 11F.'" (Dkt. 12 at 4). But the ALJ's explanation is more specific than just generally pointing to inconsistency with the entire record. Contained in the ALJ's inconsistency explanations are references to three distinct pieces of evidence: (1) Tucker's own reported abilities to "handle personal care tasks, drive, prepare simple meals, and pay bills"; (2) her minimal mental health treatment; and (3) her 4/5 muscle strength. Alone, these explanations are enough. *See Miller*, 2022 WL 566175, at *5–6 (finding that though "terse," the ALJ's explanation was sufficient).

[1] Motor strength of 4/5 or 4+/5 means that the claimant is able to move muscles against the examiner's resistance. *See Hipkins v. Barnhart*, 305 F.Supp.2d 394, 396 n.1 (D. Del. 2004) (describing motor strength scale) (citing *The Merck Manual of Diagnosis and Therapy*, § 14, at 1347 (17th ed. 1999).

Even so, the wider record again provides additional context, bolstering the ALJ's findings. In another section, the ALJ stated that, despite Tucker's self-reported physical limitations, "[Tucker] was able to prepare simple meals, sweep and vacuum. She was able to drive, but she did not drive very often or far. She was able to pay bills and count change." (Dkt. #6-3 at 17) (citing Dkt. #6-8, Exs. 3E, 7E). Similarly, the ALJ noted that "[Tucker] had lumbar spine tenderness [and] limited range of motion" but could perform "positive straight leg raises, and [she had] 4/5 muscle strength." (Dkt. 6-3 at 18) (citing Dkt. #6-8, Exs. 2F, 3F, 4F). Though Tucker "had abnormal gait" and "weakness of the bilateral legs," she "was able to walk several steps" and had "no muscle atrophy." (Dkt. #6-3 at 18) (citing Dkt. #6-8, Exs. 2F, 3F, 4F).

The ALJ concluded that Tucker's "hypertension, urinary incontinence, menorrhagia, insomnia no [sic] more than minimally limit the claimant's ability to engage in work-related activity; therefore, they are non-severe." (Dkt. #6-3 at 19). The ALJ noted Tucker "had normal cardiovascular exams despite her elevated blood pressure"; her "care for urinary incontinence did not appear to require ongoing treatment"; and Tucker "did not report specific limitations from her menorrhagia or insomnia." (Dkt. #6-3 at 19) (citing Dkt. #6-8, Exs. 2F, 3F, 4F, 5F, 6F, 9F, 14F).

These contradict the opinions of APRN Gaston, which, for example, concluded that Tucker had an inability to stand or walk for more than one hour in an eight-hour day, a need to rest or lie down for four hours per day, difficulty concentrating, thinking, and remembering, and an inability to apply common sense understanding to carry out instruction. (Dkt. #6-3 at 18–19).

As for minimal mental health treatments, the ALJ previously explained "[Tucker] was treated for depressive disorder and generalized anxiety disorder during the requester period of disability; however, she was not treated by a mental health provider during this time." (Dkt. #6-3 at 20) (citing Dkt. #6-8, Exs. 2F, 3F, 4F, 8F, 12F). Despite Tucker reporting "limitations with memory, understanding, completing tasks, following instructions, getting along with others and concentration[,] . . . she reported she could drive, do light household chores, pay bills, prepare simple meal, and perform personal care tasks." (Dkt. #6-3 at 20) (citing Dkt. #6-8, Exs. 3E, 7E). Further, the ALJ noted that Tucker's "mental status exams generally showed normal memory and fund of knowledge. There were no loose associations . . . . Higher cognitive functioning was intact, and she could perform simple math calculations." (Dkt. #6-3 at 20) (citing Dkt. #6-8, Exs. 2F, 3F, 4F, 12F). The ALJ concluded that "[g]iven the limited mental health treatment and rather benign psychological findings, I find that the claimant has no more than mild limitations in understanding, remembering or applying information, interacting with others, with concentrating, persisting or maintaining pace, and with adapting or managing oneself." (Dkt. #6-3 at 20).

In contrast, APRN Gaston opined that Tucker frequently cried and had problems coping with stress, a loss of interest in activities, sleep disturbances, and decreased energy. (Dkt. #6-8 at 19). She further opined that Tucker "would be off task 25% of the time when applying common sense understanding to carry out instructions and in dealing with several concrete variables in or from standardized situations; and

she would be off task 15% of the time in applying common sense understanding to carry out detailed but uninvolved instructions." (Dkt. #6-3 at 19).

The ALJ repeats much of the above findings in the paragraphs leading up to his finding on the persuasiveness of APRN Gaston's opinions. *See* (Dkt. #6-3 at 23). After giving this evidence more thorough treatment elsewhere, it was sufficient for the ALJ to refer to this evidence more generally in his persuasiveness finding. *See Hill v. Soc. Sec. Admin.*, No. 20-2397, 2022 WL 307383, at *5–6 (E.D. La. Feb. 2, 2022) (finding an ALJ's seemingly conclusory explanations were sufficient given the previous statements in the decision). Considering the wider decision, it is clear that a "discernible logic bridge" exists between the evidence and the ALJ's findings on inconsistency. *Cooley*, 587 F.Supp.489 at 499.

Tucker takes specific aim at the ALJ's reference to 4/5 muscle strength, stating, "[t]he ALJ did not cite any specific medical report that showed '4/5 muscle strength,' but just made a general reference to an Exhibit." (Dkt. #12 at 4–5). She cites *King v. Comm'r of Soc. Sec.* for the proposition that evidence used in the ALJ's persuasiveness findings must reference evidence precisely. (Dkt. #12 at 4–5) (citing No. 9:21-CV-85, 2023 WL 2657642, at *6 (E.D. Tex. Mar. 9, 2023)). However, *King* does not stand for this proposition. The court in *King* found that an ALJ's reference to "mental examinations [that] were essentially within normal limits" did not provide precise enough "reference to what *specific* evidence demonstrated 'normal' examinations." 2023 WL 2657642, at *5–6 (emphasis in original). Here, there is no such issue. "4/5 muscle strength" is specific evidence regarding Tucker's physical

abilities. Though the ALJ does not provide a precise pinpoint citation, the Court easily found references to 4/5 muscle strength in the record. *See, e.g.*, (Dkt. #6-8, Ex. 12F). Unlike the explanation in *King*, the ALJ's explanation here does not require the Court to "speculate as to the evidence and reason behind" his persuasiveness finding. 2023 WL 2657642, at *6. The Court therefore concludes that the ALJ's persuasiveness finding on the consistency of APRN Gaston's opinions was supported by substantial evidence.

* * * *

In sum, the ALJ applied the proper legal standard and supported his finding on the persuasiveness of APRN Gaston's opinions with substantial evidence. Tucker's objection is therefore overruled.

## IV. Conclusion

Based on the foregoing reasons, the Court concludes that Tucker's Objections to Report and Recommendation of United States Magistrate Judge, (Dkt. #12), are **OVERRULED**. It is therefore **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**So ORDERED and SIGNED this 28th day of September, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE